## BENJAMIN LANCY *v.* ABINGTON SAVINGS BANK.

### Suffolk, March, 1900.

*Tax Title — Assessment to Record Owner — Notice to Owners — Purchase by Person Assessed — Right of Redemption.*

On October 14, 1895, the record title to the land described in this application for registration was in Peter P. Veale, subject, first, to a tax deed to the petitioner dated October 18, 1893; and, second, to a mortgage to the Abington Savings Bank. The tax deed was released by deed from the petitioner to Veale, dated and acknowledged August 4, 1894, and recorded June 6, 1895.

The taxes for the year 1894 were assessed to petitioner as owner, and the tax bill and demand for payment thereof was duly sent to and received by him. On October 14, 1895, the premises were sold for non-payment of said taxes of 1894, and bid in by the petitioner in the name of his son, Benjamin C. Lancy. The purchase price was subsequently paid to the City Treasurer by the petitioner, and a tax deed delivered to him in the name of Benjamin C. Lancy, grantee. The petitioner subsequently paid the taxes for 1895, 1897 and 1898, and always treated the property as his own property standing in the name of his son, and January 16, 1900, he received a quit-claim deed from his son, paying therefor only a nominal consideration. The Abington Savings Bank had no actual notice of said tax sale of 1895 until May, 1899.

On June 3, 1896, the Abington Savings Bank made an entry to foreclose said Veale mortgage, whereof a certificate was duly recorded, and on the same day sold the property at

foreclosure sale under the power of sale mortgage, and became itself the purchaser through one Sproule, as conduit. The taxes for 1896 were paid both by said bank and by the petitioner, and the tax paid by the petitioner was refunded to him by the city because of said payment by the bank.

As preliminary to the tax sale of 1895 it was proved from the records of the Board of Assessors of the city of Boston that the board voted that 80,000 " Notices to bring in lists " should be printed and distributed to taxpayers, and it appeared from the testimony of two clerks that " the notice " was advertised in all the daily newspapers. No other evidence of the character or contents of this notice was introduced.

No evidence of the validity or nature of the petitioner's title to the property on May 1, 1894, was introduced other than a certified copy of the tax deed to him of October 18, 1893, duly recorded October 21, 1893, and a release thereof by him dated August 4, 1894, and recorded June 6, 1895. The examiner's abstract and report show further that there was no other record affecting this tax deed, and that it constituted the petitioner's only claim of title on May 1, 1894.

All facts other than above stated essential to the validity of a tax sale were duly proved by the petitioner.

On the above facts the respondent contends (1) that the taxes for 1894 were not assessed to the proper person as owner, (2) that there was not proper notice to citizens that taxes were to be assessed, (3) that the purchase at the tax sale of 1895 merely constituted payment of the taxes due and (4) that the respondent is entitled to redeem.

1. The respondent argues that the mere introduction of the tax deed of 1893 " proves nothing." Burke v. Burke, 170 Mass. 499. Robinson v. Church, Land Court Decisions, *supra* p. 13. But the tax deed of 1893 is not introduced as evidence either as to the facts stated in its recitals or as to the validity of the title to which it is the muniment. It is

evidence together with the rest of the record merely of a tax deed on the land in controversy, the record title to which deed was in the petitioner on May 1, 1894. The " proper person " to whom the petitioner must prove that the tax of 1894 was assessed was " the person appearing in the records as owner thereof on the first day of May." Pub. Stat., Chap. 11, Sect. 13. The record holder of a tax deed on that date is such person. Butler v. Stark, 139 Mass. 19. (Note: — And see Roberts v. Welsh, 192 Mass. 278.) The validity or invalidity of the record title is not a matter with which the assessors are in any way concerned. The record owner " shall be held to be the true owner " for the purpose of taxation, regardless of the truth. And an assessment to the real owner instead of the record owner is invalid. Southworth v. Edmands, 152 Mass. 203. (Note: — And see Hough v. Adams, 196 Mass. 290, at 293.)

2. Before proceeding to make assessments the assessors must give reasonable notice to the inhabitants. It is the mere fact that notice was given that is material. Notice by general advertisement is sufficient. Huling v. Kaw Valley R. R. 130 U. S. 559. Lent v. Tillson, 140 U. S. 316. The notice need only be such notice as is appropriate to the nature of the case. Hagar v. Reclamation District, 111 U. S. 701. In this case the notice was " the notice to bring in lists," required by Public Statutes, Chap. 11, Section 38, and was sufficient.

3. Payment of the purchase price of the 1895 sale by the petitioner did not constitute merely a payment of his debt. It was not " his tax." Whatever may be argued as to the ethics of his conduct, he was under no legal obligation to heed the demand for payment made on him by the collector. The constitution and the statutes recognize two distinct classes of taxes, taxes to persons and taxes on property. This was a tax on property. It might be assessed to a bare record owner, to a mere occupant, or to a dead man. Even if assessed to the owner, demand for payment may be made on an occupant.

Where it is " his tax," the statutes provide for collection by arrest of the debtor and by distraint, and where it is some one else's tax for which a man is assessed, it is on the personal property of the true owner that the levy is made for the debt. It is the " true owner " who cannot hold a tax title, not a mere record owner. There is further a class of cases, of which this may be an instance, where one may be personally liable for a tax who is not the true owner. Such personal liability, however, constitutes an additional remedy for the city, in no way derogatory to its ordinary remedy against the land itself. If the city elects to proceed against the land, instead of against the petitioner, it seems to be as much an election to treat him as a stranger, as in the case of a mortgagee in possession. He is no longer a delinquent as to a personal debt, or in default as to this tax, which was never really " his tax." He in no way becomes a purchaser of his own property, and there is nothing in his purchasing a tax title on another man's property which would warrant changing that which all parties understood to be a sale, into a mere payment of a fictitious debt. Home Savings Bank v. Boston, 131 Mass. 277.

4. The petitioner contends that the respondent bank is not a mortgagee of record within clause 4 of Section 57 of the 1888 Act, and supports his contention by a clearly drawn distinction between the purpose of the provisions of Section 57 and of Section 61, and a very good argument that the Legislature intended to conclude a former mortgagee in the position of the respondent bank, who has once entered under his mortgage and become personally liable for the taxes, by the lapse of two years after the sale as provided by Section 61 (which is chronologically the earlier statute), rather than to give him the two years after actual notice of the sale originally provided for mere security holders who might otherwise remain, without any fault on their part, both in ignorance and helplessness as to tax sales. Parker v. Baxter, 2

Gray, 185. Commissioners Notes on Revision of Statutes, 1858, at end of Chap. 12. This point was neither raised nor argued in Keith *v.* Wheeler, as appears from an examination of the original papers in that case. What weight it would have had, or might now have, with the Supreme Court we cannot say, nor is it open to us, because the decision in that case, in which it appears from the papers that the matter of merger and foreclosure was fully argued, was a square decision that the former mortgagee was still a "mortgagee of record" within clause 4 of Section 57. That decision covers the case at bar, and so far as this court is concerned is conclusive of the argument. Keith *v.* Wheeler, 159 Mass. 161. Stone *v.* Stone, 163 Mass. 474.

5. What tender is necessary, or on what terms or by what proceedings the respondent may redeem, is not a matter which this court can consider. The matter of redemption is not a matter of law, nor even of general equity, nor in anyway involved in these proceedings. Barker *v.* Mackay, 168 Mass. 76. Dewey *v.* Donovan, 126 Mass. 335.

I think that the petitioner has a good tax title, but that the respondent has a right to redeem, and having offered to redeem, the petitioner, pending proceedings therefor is not entitled to registration.

Petition dismissed.

W. O. Childs for petitioner.

G. F. Piper for respondent.

Note. — This case was taken to the Supreme Court on the question of redemption only. See Lancy *v.* Abington Sav. Bank, 177 Mass. 431.